UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

RAMO SELIMAJ,                                                    Case No.

                     Plaintiff,

          -against-                                        **COMPLAINT**

MERIDIAN PROPERTIES, LLC,
MERIDIAN MAINTENANCE GROUP, LLC,
MICHAEL NIAMONITAKIS, and
JAMES DIMITRIADES,                                        **Trial by Jury Demanded**

                 Defendants.

------------------------------------------------------------------X

       Plaintiff Ramo Selimaj ("Plaintiff" or "Selimaj"), by his attorney the Law Offices of Rudy A. Dermesropian, LLC, complaining of defendants Meridian Properties, LLC ("Meridian Properties"), Meridian Maintenance Group, LLC ("Meridian Maintenance") ("Meridian Properties" and "Meridian Maintenance" collectively referred to as "Meridian"), Michael Niamonitakis ("Niamonitakis") and James Dimitriades ("Dimitriades") (collectively "Defendants"), alleges as follows:

       1.     This lawsuit seeks to remedy Defendants' unlawful discrimination, harassment, retaliation and unlawful termination of the Plaintiff based on his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Executive Law of the State of New York, New York State Human Rights Law ("Executive Law"), § 296, *et seq.*, and the Administrative Code of the City of New York, New York City Human Rights Law ("Administrative Code"), § 8-101, *et seq.*

## PARTIES

2.      Plaintiff, who was born on May 25, 1962, was fifty-eight (58) years old at the time of his unlawful termination, is a resident and domiciliary of Brooklyn, Kings County, New York.

3.      At all relevant times herein, Plaintiff was employed by Meridian until his unlawful termination on September 18, 2020.

4.      At all relevant times herein, Plaintiff was an "employee" of Defendants within the meaning of the ADEA, 29 U.S.C. § 621 *et seq*. and the Executive law § 292(6), and a "person" within the meaning of the Administrative Code §8-102(1).

5.      Defendant Meridian Properties is a domestic for-profit limited liability company duly organized and existing under and by virtue of the laws of the State of New York.

6.      Defendant Meridian Properties maintains a principal place of business at 8214 3rd Avenue, Brooklyn, NY 11209.

7.      At all relevant times herein, Defendant Meridian Properties was an "employer" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq*., the Executive Law § 292(5) and the Administrative Code § 8-102(5).

8.      Defendant Meridian Maintenance is a domestic for-profit limited liability company duly organized and existing under and by virtue of the laws of the State of New York.

9.      Defendant Meridian Maintenance maintains a principal place of business at 8214 3rd Avenue, Brooklyn, NY 11209.

10.     At all relevant times herein, Defendant Meridian Maintenance was an "employer" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq*., the Executive Law § 292(5) and the Administrative Code § 8-102(5).

11.     At all relevant times herein, Defendant Niamonitakis was an "employee" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq*. and the Executive law § 292(6), and a "person" within the meaning of the Administrative Code §8-102(1), and a decision maker at Meridian where Plaintiff worked.

12.     At all relevant times herein, Defendant Dimitriades was an "employee" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq*. and the Executive law § 292(6), and a "person" within the meaning of the Administrative Code §8-102(1), and a decision maker at Meridian where Plaintiff worked.

13.     In committing the wrongful conduct described in this action and obtaining the benefits therefrom to Plaintiff's loss, cost, damage and detriment, one or more of the Defendants acted and operated interchangeably as principals, agents, instrumentalities and/or *alter egos* of one or more of them and/or each other.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction with respect to Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 & 1343, and 29 U.S.C. § 621 *et seq.*

15.     The unlawful employment practices were committed in Kings County, Eastern District of New York, when the within alleged conduct took place.

16.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States.

17.     This Court has supplemental jurisdiction over Plaintiff's New York State and New York City claims pursuant to 28 U.S.C. § 1367(a).  The New York State and New York City discrimination, harassment and retaliation claims are inexorably related to, arise out of the same operative facts and circumstances as, and are a necessary, integral part of the federal law claims,

such that the federal claims and New York State and New York City law claims form part of the same case or controversy.

18.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) & (2).

19.     All conditions precedent to filing suit have been satisfied. On March 11, 2021, Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") [EEOC Charge No. 520-2021-02134]. On August 12, 2021 the EEOC issued Plaintiff a Right to Sue Notice. This action was timely commenced within 90 days of Plaintiff's receipt of the Notice of Right to Sue. Annexed hereto as Exhibit A and incorporated in this Complaint is a copy of Plaintiff's Notice of Right to Sue.

## FACTS

20.     At all relevant times herein, Plaintiff was employed as a full-time Superintendent at the building located at 114 Albemarle Road, Brooklyn, NY 11218 (the "Building") from on or about January 5, 2000 until his unlawful termination on September 18, 2020.

21.     The Building where Plaintiff worked was composed of sixty-six (66) residential units.

22.     At the time of his hiring in 2000, Plaintiff was earning $430 per week.

23.     At the time of his termination in 2020, Plaintiff was earning $600 per week irrespective of the number of hours he worked, but in no event did he work less than 40 hours per week.

24.     In or around August 2008, the Building was acquired by Meridian Properties and Plaintiff was compensated on a bi-weekly basis by Meridian Maintenance.

25.     Starting from August 2008, Meridian was Plaintiff's employer.

26.     From August 2008 until September 18, 2020, Plaintiff directly reported to Defendant Dimitriades who in turn reported to Defendant Niamonitakis.

27.     Upon information and belief, Defendant Niamonitakis owns and manages a real estate portfolio of approximately 3,390 residential units in Brooklyn, New York, including but not limited to the Building where Plaintiff worked, and Defendant Dimitriades owns a percentage stake in that portfolio.

28.     Upon information and belief, Defendant Dimitriades was the manager and director of the Building.

29.     During his employment with Meridian, Plaintiff was not provided any health insurance through Meridian.

30.     Plaintiff's duties and responsibilities as the Superintendent of the Building primarily included, but were not limited to, maintaining all floors of the building, removal and disposal of the garbage, and cleaning and maintaining the outside of the building.

31.     In addition to his daily Superintendent work, Defendants also issued Plaintiff work orders to perform additional tasks such as repairing bathroom tubs, repairing leaks, repairing toilet issues, replacing radiators, replacing flooring, fixing window balances, fixing apartment door locks, removing and installing bathroom tiles, repairing electrical outlets, plastering and painting apartment areas, and removing and replacing window guards and stove knobs.

32.     Despite working significantly more hours than 40 hours per week and performing additional work to complete the work orders, Plaintiff was never paid any overtime or additional pay by Defendants during his employment.

33.     For over 20 years of employment at the Building, Plaintiff's work performance at the Building was satisfactory without any complaints or reprimands, and, upon information and belief, there were no complaints made by tenants against Plaintiff or his work performance.

34.     However, when Plaintiff got older, Defendants started making derogatory comments about his age and questioning his need to continue working after a certain age.

35.     For instance, some of the comments that Defendants made included, but may not be limited to:

   a.    "You 58 years old? I wouldn't give you any number over 47";

   b.    "Ramo, you have a nice house that you bought with your son! It is time you enjoy it. This job is not for your anymore," referring to his age and need to retire;

   c.    "Why can't you do this? You always removed furniture and disposed of it," referring to his younger years; and

   d.    "We are restructuring and giving work to people who can handle it better," referring to younger people.

36.     The foregoing comments, and other similar comments and questions, were frequently made, and increased in frequency during the last 6 months of Plaintiff's employment with Defendants.

37.     In addition, in 2020, during the Covid-19 pandemic and before any vaccine became available to the public, and at a time when the Centers for Disease Control and Prevention ("CDC") and states were instructing and requiring people to remain distant from each other for at least 6 feet, to wear masks and to quarantine whenever they exhibit certain symptoms, Defendants completely ignored those guidelines and warnings, and failed to put in place any protocols at the Building to ensure the safety of Plaintiff and the tenants.

38.     Because Plaintiff was concerned about the increased risk of the Covid-19 virus for people of his age and older, he requested from Defendants to implement steps and procedures ensuring that tenants do not have fever, cough, or other symptoms when he would access their apartments to do any type of work.

39.     On one occasion, Plaintiff sent an email to Defendants on August 27, 2020 requesting that they ensure that tenants are not sick while he accesses the apartment.

40.     Not only did Defendants ignore Plaintiff's requests, but on September 11, 2020, shortly after complaining to Defendants about the lack of Covid-19 protocol in the Building putting older people like him at risk, Defendant Dimitriades contacted Plaintiff on the phone demanding to see him in the Building.

41.     When Plaintiff informed Defendant Dimitriades that he will be available to meet in a matter of minutes, Dimitriades stated that he had no time to wait and instructed Plaintiff to meet with him at the office located at 210 85th Street Apt A2, Brooklyn, NY 11209.

42.     At that meeting Defendant Dimitriades asked Plaintiff when he will be "letting go" of the Superintendent Job.

43.     In response, Plaintiff stated that he had "no intention of quitting" and that he was "58 years old now."

44.     Dimitriades responded, "You 58 years old? I wouldn't give you any number over 47."

45.     Defendant Dimitriades proceeded to tell Plaintiff that management is forced to hire people to do the jobs that Plaintiff was not doing because of he was not able to access the apartments due to Covid-19.

46.     Dimitriades further states that his assistants at the office were having a "hard time" to find other people to do these jobs, referring to younger people who did not share the same Covid-19 concerns as Plaintiff, who was 58 years old at the time.

47.     Plaintiff reminded Dimitriades that he needs better protection at his age in order to do his job safely and if proper guidelines and protocols were put in place to ensure people of his age were safe doing their jobs, then it would not be an issue.

48.     Plaintiff further stated at the meeting "you're doing this to me because I am 58 years old."

49.     Dimitriades stated "not true, you are 47. Come on Ramo you're not that old," and concluded the meeting by stating that Defendants needed someone to always be at the building and someone to handle the work irrespective of Covid-19 concerns. Dimitriades then asked Plaintiff to negotiate to leave the job.

50.     Plaintiff continued maintaining the Building for one week past the September 11, 2020 meeting, and on September 18, 2020, Defendant Dimitriades met Plaintiff while working in the basement of the Building and terminated him.

51.     Plaintiff was in shock of being terminated after over 20 years of employment at the Building and told Defendant Dimitriades that they are only doing this because he is "older now."

52.     Dimitriades responded, "Ramo, I hate to do this and have to do this, but just don't waste your money on lawyers because this is at-will employment and we could hire anyone we want."

53.     Following Plaintiff's termination, Defendants replaced Plaintiff with a much younger Superintendent who is believed to be in his mid-thirties.

54.     As a result of Defendants' discriminatory, harassing and retaliatory conduct, Plaintiff suffered and continues to suffer, among other things, mental anguish, emotional distress, loss of enjoyment of life, stress, and other monetary damages connected with Defendants' aforementioned violations.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Discrimination on the Basis of Plaintiff's Age in Violation of the**
**ADEA, 29 U.S.C. § 621 *et seq*., against the Meridian Defendants**

55.     Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

56.     At the time of his unlawful termination, Plaintiff Selimaj was fifty-eight (58) years old and at all relevant times herein was a member of the protected class under the ADEA.

57.     Defendants engaged in, perpetuated and permitted supervisors, co-workers and decision makers to engage in discriminatory employment practices against Plaintiff in which Plaintiff's age was the motivating, if not the only, factor.

58.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

59.     As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Discrimination on the Basis of Plaintiff's Age in Violation of the**
**Executive Law §§ 296, et seq. against All Defendants**

60.     Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

61.     At the time of his unlawful termination, Plaintiff Selimaj was fifty-eight (58) years old and at all relevant times herein was a member of the protected class under the Executive Law.

62.     Defendants engaged in, perpetuated and permitted supervisors, co-workers and decision makers to engage in discriminatory employment practices against Plaintiff in which Plaintiff's age was the motivating, if not the only, factor.

63.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

64.     As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Discrimination on the Basis of Plaintiff's Age in Violation of the**
**Administrative Code, §§ 8-107, *et seq*. against All Defendants**

65.     Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

66.     At the time of his unlawful termination, Plaintiff Selimaj was fifty-eight (58) years old and at all relevant times herein was a member of the protected class under the Administrative Code.

67.     Defendants engaged in, perpetuated and permitted supervisors, co-workers and decision makers to engage in discriminatory employment practices against Plaintiff in which Plaintiff's age was the motivating, if not the only, factor.

68.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

69.     As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Retaliation in Violation of the ADEA, 29 U.S.C. § 621 *et seq*., against the Meridian Defendants for Complaining about Age Discrimination

70.     Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

71.     In violation of the ADA, 29 U.S.C. §§ 621 *et seq*., Defendants retaliated against Plaintiff for complaining of the discriminatory, harassing and disparate treatment he was subjected to by Defendants.

72.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

73.     As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Retaliation in Violation of Executive Law, §§ 296,** *et seq.* **against**
**All Defendants for Complaining about Age Discrimination**

74.     Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

75.     In violation of the New York State Executive Law §§ 296, *et seq.*, Defendants retaliated against Plaintiff for complaining of the discriminatory, harassing and disparate treatment he was subjected to by Defendants.

76.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

77.     As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Retaliation in Violation of Administrative Code, §§ 8-107,** *et seq.* **against**
**All Defendants for Complaining about Age Discrimination**

78.     Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

79.     In violation of the New York City Administrative Code §§ 8-107 *et. seq.*, Defendants retaliated against Plaintiff for complaining of the discriminatory, harassing and disparate treatment he was subjected to by Defendants.

80.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

81.     As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Ramo Selimaj prays that this Court:

A.      award Plaintiff equitable relief of back pay, salary, reimbursement of expenses and fees paid by Plaintiff, and fringe benefits;

B.      award Plaintiff full compensation damages under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., Executive Law of the State of New York, New York State Human Rights Law, § 296, *et seq.*, and the Administrative Code of the City of New York, New York City Human Rights Law, § 8-101, *et seq*.;

C.      award full liquidated and punitive damages as allowed under Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., Executive Law of the State of New York, New York State Human Rights Law, § 296, *et seq.*, and the Administrative Code of the City of New York, New York City Human Rights Law, § 8-101, *et seq*.;

D.      award pre-judgment and post-judgment interests;

E.      award Plaintiff an amount to be determined at trial of lost compensation, back-pay, bonuses, raises, emotional distress damages, and additional amounts such as liquidated damages;

F.      award Plaintiff such compensatory, prospective, exemplary and punitive damages as this Court deems appropriate, just and proper;

G.      award Plaintiff the cost of prosecuting this action and for reasonable attorneys' fees under the aforementioned statutes and 42 U.S.C. § 1988; and

H.      such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated:  New York, New York
        November 9, 2021

                        Respectfully Submitted,

                        **LAW OFFICES OF**
                        **RUDY A. DERMESROPIAN, LLC**

                        By:  ___*s/ Rudy A. Dermesropian*_____
                             Rudy A. Dermesropian (RD 1882)
                             810 Seventh Avenue, Suite 405
                             New York, NY 10019
                             Telephone: (646) 586-9030
                             Fax: (646) 586-9005

                             *Attorneys for Plaintiff Ramo Selimaj*

# Exhibit "A"

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Ramo Selimaj**
**2316 79th Street**
**Brooklyn, NY 11219**

From:  **Newark Area Office**
**283-299 Market Street**
**Two Gateway Center, Suite 1703**
**Newark, NJ 07102**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2021-02134** | **Alvin L. Mallette,**<br>**Supervisory Investigator** | **(973) 645-5975** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

FOR
**John Waldinger,**
**Area Office Director**

August 12, 2021
*(Date Issued)*

Enclosures(s)

cc:  **Demetriades**
**Director**
,

**Rudy A. Dermesropian, Esq.**
**LAW OFFICE OF RUDY A DERMESROPAN, LLC**
**810 Seventh Avenue**
**Suite 405**
**New York, NY 10019**